UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
ROLANDO CHINGO GARCIA,

            Plaintiff,

    -against-

HATCHET WORKS CORP.,
JONATHAN D. SUSSMAN,
RITA BOWLES, and ABC CORP., a
fictitious name
intending to be that of an unknown
contractor,

            Defendants.
------------------------------------------------x
HATCHET WORKS CORP.,

            Third-Party Plaintiff,

    -against-

GGR CONSTRUCTION CORP,

            Third-Party Defendant.
------------------------------------------------x

**<u>MEMORANDUM AND ORDER</u>**

Case No. 1:22-CV-03222 (FB) (SJB)

*Appearances:*
*For the Plaintiff*:
HOLLY OSTROV RONAI
Ronai & Ronai, LLP
34 Adee Street
Port Chester, NY 10573

*For the Third-Party Defendant GGR
Construction Corp*:
Christina Falcone
16 Stockton Street
Tinton Falls, NJ 07724

*For the Defendant/Third-Party
Plaintiff Hatchet Works Corp.*:
JESSICA J. BEAUVAIS, ESQ.
Perry, Van Etten, Rozanski &
Kutner, LLP
14 Wall Street, Suite 4D
New York, NY

*For the Defendants Jonathan D.*
*Sussman & Rita Bowles*:
SYDNEY ALEXIS FETTEN
Gordon Rees Scully Mansukhani
1 Battery Park Plaza
Ste 28th Floor
New York, NY 10004

**BLOCK, Senior District Judge:**

In this personal injury lawsuit premised on diversity jurisdiction, Plaintiff Rolando Chingo Garcia ("Plaintiff"), Defendant/Third-Party Plaintiff Hatchet Works Corporation ("Hatchet Works"), and Defendants Jonathan D. Sussman & Rita Bowles (together, the "Owners") have cross-moved for summary judgment.[1] Separately, Third-Party Defendant GGR Corporation ("GGR" or the "Debtor") has filed for bankruptcy and Hatchet Works has asked the Court to extend the automatic stay to the claims asserted against it. Plaintiff has also moved to sever Hatchet Works' Third-Party action against GGR.

For the following reasons, the motions are granted in part and denied in part, and the Third-Party action by Hatchet Works against GGR is severed.

---

[1] Since the matter is one of diversity, New York law applies. *See, e.g.*, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).

# I.   BACKGROUND

The facts presented here, as well as those in the Discussion section, are taken from the pleadings, the parties' Rule 56.1 statements, and the supporting documentation.  The facts are undisputed unless otherwise noted.

Plaintiff was injured while working on a renovation at a single-family home owned by Defendants Sussman & Bowles.  The Owners hired Hatchet Works as the general contractor in charge of the construction project.  Hatchet Works hired GGR to remove and install vinyl siding on the exterior of the home.  And GGR hired Plaintiff.

Plaintiff was performing this work at the time of his injury.  He stated in his deposition that he fell off a scaffolding platform that was erected four feet above a sloped front porch roof on the exterior of the home, and twenty feet above the ground.  Pl.'s Ex. I at 63-65, 78, 85-87.  Neither the scaffold nor the porch roof had guardrails.  Although GGR had safety harnesses with lifelines for its employees to use, Plaintiff was not wearing his at the time of his fall.  His boss at GGR — Plaintiff's brother, the owner of GGR, Gabriel Chingo Garcia — stated in his deposition that using the safety harness in the area where Plaintiff was working could present a "hazard" because the long lines could get tangled while Plaintiff was going up and down the ladders.  Hatchet Works Ex. L. at 116-18.

According to Plaintiff, he slipped off the scaffold and fell four feet onto the sloped porch roof.  He then slid off the sloped roof and fell another sixteen feet onto the ground. One of Plaintiff's co-workers testified that Plaintiff slipped while he was on the sloped porch roof rather than the scaffolding.  Hatchet Works Ex. N at 29-30.

Plaintiff sued Hatchet Works and the Owners, raising claims for common law negligence and violations of N.Y. Lab. Law §§ 200, 240(1), & 241(6).  The Owners crossclaimed against Hatchet Works for apportionment, common law indemnification, and contractual indemnification.  Hatchet Works impleaded GGR, raising claims of contractual and common law indemnification, breach of contract for failure to procure insurance, and contribution.

On March 25, 2024, GGR filed a Chapter 7 petition for bankruptcy, thereby staying all proceedings against it pursuant to 11 U.S.C. § 362(a).  On April 25, 2024, Hatchet Works submitted a letter-motion requesting that the Court extend the automatic stay to halt the proceedings against it, asserting that any judgment against it would be a judgment against GGR pursuant to Hatchet Works' indemnification claims.  The Court heard oral argument on Hatchet Works' motion on May 9, 2024.

## II.   THE AUTOMATIC STAY

### a.  Positions of the Parties

Hatchet Works argues that GGR's contractual indemnification obligations justify extending the automatic stay because any liability Hatchet Works incurs to Plaintiff will be automatically applied against GGR.  As its counsel stated during oral argument, Hatchet Works is being held "vicariously liable because of the negligence of the subcontractor."  Furthermore, trying Plaintiff's claims against Hatchet Works while GGR is in bankruptcy could produce inconsistent results, as Hatchet Works will have to re-litigate GGR's negligence.

In opposition, Plaintiff argues that extending the stay is unnecessary because Plaintiff has direct causes of action against Hatchet Works that may be adjudicated without implicating GGR.  Moreover, the outcome of Hatchet Works' indemnification claims is a "fact specific" determination, and cannot be reliably ascertained while the indemnitor, GGR, is subject to the automatic stay. Ultimately, Plaintiff argues, granting the stay will "delay this matter for years," and unfairly prejudice Plaintiff's attempt to recover on his independent claims against Hatchet Works.

### b.  General Principles

It is well-established that automatic stays under § 362(a) are limited to debtors and do not automatically encompass non-bankrupt third-party plaintiffs, such as Hatchet Works.  *See Teachers Ins. And Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986).  An automatic stay may be extended to claims against non-debtors only "where a claim against [a] non-debtor will have an immediate adverse economic consequence for the debtor's estate."  *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003).  This applies when non-debtors are "entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case."  *See In re Durr Mech. Constr., Inc.*, 604 B.R. 131, 137 (Bankr. S.D.N.Y. 2019) (citing *A.H. Robins v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)).

Extending an automatic stay is appropriate in that circumstance "because a judgment against the non-debtor will affect directly the debtor's assets."  *In re N. Star Contracting Corp.*, 125 B.R. 368, 371 (S.D.N.Y. 1991); *see also In re Durr*, 604 B.R. at 137 (extending stay where debtor had "absolute obligation to indemnify [non-debtor] for its losses should it lose and its legal expenses").  However, courts have cautioned that extending an automatic stay to non-debtors should be done only in a "narrow" set of circumstances.  *Mardice v. Ebony Media Operations, LLC*, No. 19-CV-8910 (VSB), 2021 WL 146358, at *3-4 (S.D.N.Y.

6

Jan. 15, 2021).  Moreover, "[t]he movant bears the burden of demonstrating the need for [extending the automatic stay]."  *Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*, No. 13 CIV. 4650 JFK, 2014 WL 4783008, at *3 (S.D.N.Y. Sept. 25, 2014) (citing *LaSala v. Needham & Co., Inc.*, 399 F.Supp.2d 421, 427 (S.D.N.Y. 2005)).

### c. Application

Here**,** Hatchet Works has not met its burden.  Extending the automatic stay to Hatchet Works in not warranted because GGR's contractual indemnification obligation is limited to Plaintiff's injuries "caused in whole or in part by negligent acts or omissions of the Subcontractor."  Hatchet Works' Ex. P at 2.  Therefore, in contrast to the authorities that Hatchet Works relies on, it is not entitled to "absolute" indemnification.  *See Robert Plan Corp. v. Liberty Mut. Ins. Co.*, No. 09-08027, 2010 WL 1193151, at *3 (E.D.N.Y. Mar. 23, 2010) (sufficient indemnification obligation where debtor had "preemptively" informed court that it would indemnify non-debtors); *In re N. Star Contracting Corp.*, 125 B.R. 368, 371 (S.D.N.Y. 1991) (staying lawsuit against president of debtor, based on actions he took on behalf of the debtor, because debtor's indemnification obligations covered actions taken by its officers on its behalf).

Instead, to obtain indemnification Hatchet Works will have to prove both that GGR was negligent and that GGR's negligence caused Plaintiff's injuries.

*Compare Hernandez v. Argo Corp.*, 945 N.Y.S.2d 662, 664 (1st Dep't 2012)

(finding that "[contractual] indemnification depends on the extent to which

[indemnitor's] negligence is determined to have contributed to the accident"), *with*

*Brown v. Two Exch. Plaza*, 76 N.Y.2d 172, 178 (N.Y. 1990) (discussing

indemnification clause that operated "even though the subcontractor has not been

negligent").  As a practical matter, the underlying facts of that legal determination

may be flushed out in this lawsuit.  But the issue itself — GGR's negligence —

cannot be reached, as a matter of law, because it is not a prerequisite, as will be

seen, *infra*, to the claims that have survived the automatic stay.  *See Brown*, 76

N.Y.2d at 179 ("A violation of [§ 240(1)] is not the equivalent of negligence and

does not give rise to an inference of negligence."); *Ross v. Curtis-Palmer Hydro-*

*Elec. Co.*, 81 N.Y.2d 494, 502 n.4 (N.Y. 1993) (violating "§ 241(6) is merely some

evidence of negligence").

Thus, courts have found that extending an automatic stay is not appropriate

where a non-debtor's liability is based "upon his own breach of duty."  *See*

*Variable-Parameter Fixture v. Morpheus*, 945 F. Supp. 603, 608 (S.D.N.Y. 1996)

*see also Mardice*, 2021 WL 146358, at *3 (declining to extend automatic stay

where plaintiff sought to "hold each of the individual [d]efendants directly liable"

(citing *In re Metal Center, Inc.*, 31 B.R. 458, 462 (Bankr. D. Conn. 1983))).  Here,

8

Plaintiff has brought a direct negligence claim against Hatchet Works based on its own conduct, as well as claims for statutory liability predicated upon Hatchet Works' nondelegable duties to provide adequate safety devices and comply with applicable safety rules.  As such, it is on the hook for its own alleged breaches of duty, not GGR's.

In conclusion, the Court believes that both the apparent lack of an "absolute" indemnification obligation and the independent nature of Plaintiff's claims against Hatchet Works counsel against an extension of the automatic stay.  *See CAE Indus. Ltd. v. Aerospace Holdings Co.,* 116 B.R. 31, 33 (Bankr. S.D.N.Y. 1990) (declining to extend automatic stay where defendant was "not absolutely entitled to indemnity" and claims were "[d]irect").  Accordingly, Hatchet Works' motion is denied.[2]

### III.   PLAINTIFF'S MOTION TO SEVER

Federal Rule of Civil Procedure 21 grants this Court discretion to sever "any claim against a party."  Fed. R. Civ. P. 21.  Severed claims become "entirely

---

[2] Although Hatchet Works has also raised a claim against GGR for common law indemnification, there is no allegation in the record that Plaintiff suffered a "grave" injury, as is required by statute. *Blackburn v. Wysong & Miles Co.*, 783 N.Y.S.2d 609, 610 (2d Dep't 2004).  Thus, there can be no automatic liability against GGR on this ground either.

independent actions, and judgment entered thereon, independent." *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 502 (S.D.N.Y. 2013). "The decision whether to grant a severance motion is committed to the sound discretion of the trial court." *State of N.Y. v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988). Courts in this Circuit typically consider the following factors in determining if severance is appropriate: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims. *Oram*, 979 F. Supp. 2d at 502.

Having determined that the automatic stay does not extend beyond the third-party action, logic dictates severance of the claims against GGR. *See E.I. Du Pont De Nemours & Co. v. Fine Arts Reprod. Co.*, No. 93 CIV. 2462 (KMW), 1995 WL 312505, at *5 (S.D.N.Y. May 22, 1995) (severing claims against non-bankrupt co-defendant because he was not entitled to extension of automatic stay); *see also Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 722 (S.D.N.Y. 2011) (recognizing propriety of severance "to avoid delay due to automatic bankruptcy stay" (citing *Cashman v. Montefiore Med. Ctr.*, 191 B.R.

558, 563 (S.D.N.Y.1996))).  Judicial economy is facilitated by permitting Plaintiff

to proceed on his direct claims against Hatchet Works, *see Cofane Assocs., LLC v.*

*Long Island City Devs. Grp., LLC*, No. 21-CV-7162 (JS) (ST), 2022 WL 4813060,

at *8 (E.D.N.Y. Aug. 29, 2022) (finding that "[j]udicial economy is certainly

facilitated by allowing" claim to proceed rather than waiting for bankruptcy stay to

be lifted), and granting severance avoids the undue prejudice of compelling

Plaintiff to seek a partial judgment or face other related obstacles.[3]  Satisfaction of

these two factors alone suffices to justify severance.  *See Ricciuti v. New York City*

*Tr. Auth.*, 796 F. Supp. 84, 86 (S.D.N.Y. 1992).

　　Accordingly, Plaintiff's motion to sever Hatchet Work's third-party action

against GGR is granted; that action will be held in abeyance pending resolution of

the bankruptcy proceeding.  Plaintiff's claims against Hatchet Works — to the

extent they survive summary judgment, as discussed *infra* — shall proceed.

---

[3] In opposing severance, Hatchet Works argues that Plaintiff could only suffer minimal prejudice if severance were denied, because Hatchet Works or GGR could move the bankruptcy court to lift the automatic stay and permit a single trial with damages up to the $1 million insurance policy limit required by GGR's subcontract.  But Hatchet Works' argument is undermined by its pending breach of contract claim against GGR for failure to procure the required insurance coverage. Whatever the extent of GGR's alleged insurance policy, the Court declines to hold GGR's alleged breach of contract against the Plaintiff or recognize it as a limit on Plaintiff's independent right of recovery against Hatchet Works.  Particularly where, as here, the Court has found that Hatchet Works is not entitled to an extension of the automatic stay as a matter of law.

## IV.   SUMMARY JUDGMENT

### a.  Legal Standard

Summary judgement is appropriate only if the pleadings, the discovery materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  On a motion for summary judgment, the court must "resolv[e] all ambiguities and draw[] all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Sloley v. VanBramer*, 945 F.3d 30, 36 (2d Cir. 2019) (citing *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010)).

### b.  New York Labor Law § 200

Hatchet Works and the Owners have both moved for summary judgment to dismiss Plaintiff's claims for common law negligence and violation of § 200.  Both motions are granted.

New York Labor Law § 200 is a codification of the common-law duty of property owners and general contractors to provide workers with a reasonably safe place to work.  *Ross*, 81 N.Y.2d at 505.  Accordingly, liability under the statute is governed by common-law negligence principles.  *Chowdhury v. Rodriguez*, 867 N.Y.S.2d 123, 128 (2d Dep't 2008).  Thus, Plaintiff's claims for statutory negligence and common law negligence are analyzed together.  *See Comes v. New York State Elec. & Gas Corp.*, 592 N.Y.S.2d 478, 479 (3rd Dep't).  Here, the

12

parties agree that Plaintiff's injury involves the manner of work performed, and so liability may attach only if the owner or general contractor exercised some supervisory control over Plaintiff's work.  *Ross*, 81 N.Y.2d at 505.

Plaintiff argues that summary judgment is not warranted because the appropriate test under New York law is whether Hatchet Works or the Owners had the *authority* to direct Plaintiff's work.  But as this Court has previously recognized:

> [E]vidence of *exercise* of direct supervisory control over the manner in which the activity alleged to have caused the injury was performed, rather than mere possession of contractual authority, is necessary to trigger Section 200 liability.

*Gonzalez v. Gotham Org. Inc.*, No. 16-CV-607 (FB) (ST), 2023 WL 6214544, at *3 (E.D.N.Y. Sept. 25, 2023) (cleaned up & emphasis in original) (collecting cases).  As the New York Court of Appeals has explained, this rule is an outgrowth of the basic common-law principle that "an owner or general contractor [sh]ould not be held responsible for the negligent acts of others over whom [the owner or general contractor] had no direction or control."  *Ross*, 81 N.Y.2d at 505 (citation omitted).

The cases Plaintiff relies on do not warrant a different rule because at bottom they recognize the same proposition — *i.e.*, that "mere general supervisory authority at a worksite for the purpose of overseeing the progress of the work and

inspecting the work product is insufficient to impose liability under Labor Law § 200." *Ortega v. Puccia*, 866 N.Y.S.2d 323, 330 (2d Dep't 2008).

The only evidence of control proffered by Plaintiff is the contract between Hatchet Works and the Owners, which established that Hatchet Works:

> Shall supervise and direct the Work using [its] best skill and attention
> . . . and shall be solely responsible for and have control over
> construction means, methods, techniques, sequences, and procedures,
> and for coordinating all portions of the Work.

Ex. O. at 6. But from this, the Court can only find a right "to generally supervise the work." *Robinson v. Cnty. of Nassau*, 923 N.Y.S.2d 135, 137 (2d Dep't 2011); *see also Ross*, 81 N.Y.2d at 506 (insufficient to find § 200 liability where general contractor undertook to "supervise" the construction work). The remainder of the record is devoid of any evidence that anyone from Hatchet Works, or either of the Owners, actually supervised Plaintiff in the course of his work. Accordingly, Hatchet Works' and the Owners motions for summary judgment on Plaintiff's claims under § 200 and common law negligence are both granted, and the claims are dismissed.

### c. Homeowner's Exemption

The Owners have moved to dismiss Plaintiff's claims for statutory liability against them pursuant to the homeowner's exemption. *See, e.g.*, *Chowdhury*, 867 N.Y.S.2d at 127 ("Labor Law § 240(1) and § 241(6) contain identical language

exempting from the statutes 'owners of one and two-family dwellings who contract for but do not direct or control the work.'").  Plaintiff argues that the Owners waived this defense by not raising it in their Answer and are thereby precluded from asserting it for the first time in their summary judgment papers.

Neither party disputes that the homeowner exemption is an affirmative defense that must be pleaded under Federal Rule of Civil Procedure 8(c). Nonetheless, a failure to plead an affirmative defense does not necessarily result in waiver.  *Rose v. AmSouth Bank of Fla.*, 391 F.3d 63, 65 (2d Cir. 2004).  The Second Circuit has permitted district courts to entertain previously unpled affirmative defenses at the summary judgment stage "in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings."  *Id.*

Here, the Court declines to find that the Owners have waived the homeowner exemption defense for several reasons.  First, counsel for the Owners asserts that she raised the exemption during her first phone call with Plaintiff's counsel, and in every subsequent conference in this case, whether with the parties or the Court.  The Owners' pre-motion letter submitted in advance of the parties' summary judgment briefing also laid out their intention to rely on the defense in their briefing.  Thus, there can be no prejudice or any evidence of bad faith that

15

would warrant precluding the assertion of this affirmative defense.

Second, the homeowner exemption arises from the plain text of both underlying statutes. *Chowdhury*, 867 N.Y.S.2d at 127. In the context of a Rule 8(c) requirement, which is fundamentally a notice provision, Plaintiff cannot credibly claim surprise that its lawsuit against homeowners would require litigating the statutory exception that excludes that very class of party.

Last, the defense reflects the New York Legislature's express intent of baking in a safety valve to "shield homeowners from the harsh consequences of strict liability under the provisions of the Labor Law." *Bartoo v. Buell*, 87 N.Y.2d 362, 367 (N.Y. 1996). Residential homeowners' relative lack of sophistication justifies a carveout from the typical construction owners who are more likely to deal with these kinds of claims as a component of their everyday business. Barring homeowners from proffering this protection based upon a procedural technicality confounds the Legislature's goal, without rhyme or reason.

Turning to the merits, the exemption applies here because there is no dispute that the Owners used the residence as a one- or two-family dwelling and did not direct or control Plaintiff's work. Accordingly, Plaintiff's claims under §§ 240(1) and 241(6) against the Owners are dismissed.

### d.  New York Labor Law § 240(1)

Turning to the claims against Hatchet Works under New York Labor Law

16

§ 240(1), that statute imposes a nondelegable duty upon owners and general contractors and their agents to provide safety devices necessary to protect workers from risks inherent in elevated work sites. *Von Hegel v. Brixmor Sunshine Square, LLC*, 115 N.Y.S.3d 712, 713 (2d Dep't 2020). To prevail on a cause of action alleging a violation of § 240(1), a plaintiff must prove that the defendant violated the statute and that such violation was a proximate cause of his or her injuries. *See Blake v. Neighborhood Hous. Servs. of N.Y. City*, 1 N.Y.3d 280, 287 (N.Y. 2003).

Plaintiff argues that he is entitled to summary judgment because his supervisor conceded that the safety harness available to Plaintiff could be a hazard in his working area as he went up and down ladders. But "the issue of whether a particular safety device provided proper protection is generally a question of fact for the jury." *Alava v. City of New York*, 668 N.Y.S.2d 624, 625 (2d Dep't 1998). And reserving this issue for the jury is appropriate here because there are conflicting accounts of where Plaintiff was when he fell, raising factual questions about the adequacy of the safety harness. In addition, Plaintiff's co-worker stated that he knew about the safety harnesses and used them on the site when he thought it was necessary. Hatchet Works Ex. N at 24. Drawing all reasonable inferences in favor of Hatchet Works, this admission further indicates that the safety harness may have been adequate for the work Plaintiff had been performing. Therefore,

17

Plaintiff is not entitled to summary judgment.

### e.  New York Labor Law § 241(6)

Last, Plaintiff moves for summary judgment on his § 241(6) claim against Hatchet Works, which requires owners and contractors to "provide reasonable and adequate protection and safety" for workers and to comply with the specific safety rules and regulations promulgated by the Commissioner of the Department of Labor. *Ross*, 81 N.Y.2d at 501-02.  The duty imposed by § 241(6) is nondelegable; therefore, a plaintiff does not need to show that a general contractor exercised supervision or control over its worksite to establish liability.  *See Rizzuto v. L.A. Wenger Contracting Co.*, 91 N.Y.2d 343, 348-49 (N.Y. 1998) (recognizing that the legislative goal of § 241 to place "ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor") (emphasis omitted).

To establish liability under § 241(6), a plaintiff must plead and prove the violation of an applicable Industrial Code regulation.  *Buckley v. Columbia Grammar & Preparatory*, 841 N.Y.S.2d 249, 256 (1st Dep't 2007) (citing *Ross*, 81 N.Y.2d at 502).  The applicable Industrial Code regulation must constitute a specific, positive command, and not one that merely reiterates the common law standard of negligence.  *Id.*  The regulation must also be applicable to the facts, and its violation must be the proximate cause of a plaintiff's injury.  *Id.*  Here,

Plaintiff invokes alternative industrial code violations, but is not entitled to summary judgment under either.

First, Plaintiff invokes Section 23-5.1(j)(1), which states that "all scaffold platforms . . . shall be provided with safety railings constructed and installed in compliance with this Rule."  Plaintiff argues that he is entitled to summary judgment for a violation of this rule because it is undisputed that the scaffolding platform he allegedly fell from did not have safety railings.  But summary judgment is precluded by Plaintiff's co-worker's testimony that Plaintiff fell from the sloped porch roof, rather than the scaffolding.

Recognizing this, Plaintiff hedges by also invoking Section 23-1.24(a)(1) of the Industrial Code, which creates a duty to use roofing brackets on sloped roofs. Plaintiff argues that his co-worker's testimony that Plaintiff's feet were directly on the sloped roof at the time of his fall means that roofing brackets were not present. But the Court may not draw such an inference against the non-movant in a summary judgment posture.  That Plaintiff was standing on a sloped part of the roof, alone, does not show that the brackets were not present.  Accordingly, Plaintiff's motion for summary judgment against Hatchet Works on these claims is denied.

## V.   CONCLUSION

For the foregoing reasons, Hatchet Works' motion to extend the automatic stay to claims raised against it is denied.  Plaintiff's motion to sever Hatchet Works' third-party action is granted.  Accordingly, it will be held in abeyance pursuant to § 362, pending direction from the bankruptcy court.

The Owners' motion for summary judgment is granted; accordingly, all claims against the Owners are dismissed.  Hatchet Works' motion for summary judgment on Plaintiff's claims against it for common law negligence and violation of § 200 is granted; accordingly, those claims are also dismissed.  Plaintiff's motions for summary judgment on its claims under §§ 240(1) and 241(6) are both denied.

Trial shall be held on Plaintiff's §§ 240(1) and 241(6) claims against Hatchet Works to determine whether he was provided an adequate safety device, and whether the area of the construction site had been compliant with the applicable Industrial Code regulations.

## VI.   CODA

The Court is aware of the somewhat paradoxical circumstances facing Hatchet Works.  Depending on the outcome of the incipient trial, it may or may not have indemnification rights it would want to assert against its subcontractor, which potentially could result in litigation before the bankruptcy court entailing the same issues which will now be tried before the Court.  In the interim, it will be liable to

Plaintiff for any damages which may emanate from this litigation.  It would be

relegated therefore to the status of a creditor in the bankruptcy proceeding should it

wish to pursue indemnification against its subcontractor.  But the problem that

Hatchet Works faces is of its own doing.  It chose the subcontractor and could have

ensured that it was a responsible one.  The Plaintiff should not be penalized for

Hatchet Works' failing and be thrust into the imponderables of the bankruptcy

proceedings.


**SO ORDERED.**


_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
May 22, 2024